UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 20-cr-230-2 (ECT/TNL) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Joel Llamas Garcia, | |
| Defendant. | |

---

LeeAnn K. Bell, Jordan L. Sing, and Lindsey E. Middlecamp, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Joel Llamas Garcia, *pro se*.

---

*Pro se* Defendant Joel Llamas Garcia has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, based on claims he received ineffective assistance of counsel. ECF No. 194. Central to the motion is the argument that counsel was ineffective in failing to inform Mr. Garcia of the sentencing-related consequences of pleading guilty versus going to trial, causing Mr. Garcia to reject the plea agreement. *See* ECF No. 195. The motion will be denied because Mr. Garcia fails to show that his counsel's performance was deficient.

I

On July 14, 2021, following a three-day trial, a jury found Mr. Garcia guilty of conspiring to distribute methamphetamine and heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. ECF No. 125; *see also* ECF No. 29. The conviction

triggered a 120-month mandatory minimum imprisonment term. *See* 21 U.S.C. § 841(b)(1)(A). On November 15, 2021, Mr. Garcia was sentenced to 180 months' imprisonment, followed by five years of supervised release. ECF No. 162. Mr. Garcia appealed his conviction and sentence. ECF No. 166. The Eighth Circuit affirmed. ECF No. 182. The mandate issued May 1, 2023. ECF No. 184. Mr. Garcia currently is serving his sentence at Federal Correctional Institution Lompoc II in Lompoc, California; his projected release date is July 4, 2032. *See* Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Nov. 12, 2024).

On June 11, 2021, a little more than one month before trial began, the Court held a *Frye-Lafler* hearing by video with Mr. Garcia, his then counsel, a sworn interpreter, and the Assistant United States Attorney. *See* ECF Nos. 95, 202 at 2–3. Mr. Garcia consented to have the hearing conducted by video, and he agreed that his counsel had "gone over [his] rights regarding th[e] hearing" and that he understood those rights. ECF No. 202 at 5.[1]

During the hearing, the Government explained "the difference of the [sentencing] guidelines . . . between going to trial versus the plea agreement." *Id.* 202 at 6. Two plea agreements were sent to Mr. Garcia's counsel, described as follows:

> So the first plea agreement was sent to Counsel on November 20th, 2020, and the second plea agreement was sent on January 15th, 2021. The second plea agreement was sent because there was an error in the methamphetamine mixture guidelines in the first plea agreement. The Base Offense Level for the mixture should have been a 34 and it was listed as a 36. And so the

---

[1] The hearing was conducted by video due to COVID-19 restrictions in place at the time, and as authorized by the CARES Act and the general orders of the Chief Judge of the District of Minnesota. *See* ECF No. 202 at 4–5.

2

> second plea agreement corrects only that and otherwise they were identical.

*Id*. at 6–7.  The Government detailed the terms of the second plea agreement, including the sentencing ranges Mr. Garcia faced in the plea agreement versus going to trial:

> The plea agreement would have required the defendant to agree to plead guilty to Count 1 of the indictment, which charges him with conspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine, and one kilogram or more of a mixture and substance containing heroin.
>
> . . . [R]elevant to this hearing the guidelines provided that the Base Offense Level could be as low as a 34 or as high as a 38 depending on the purity of the methamphetamine involved, the lab still pending at the time that the plea agreement was sent.
>
> The plea agreement then also contemplated that the defendant might be eligible for safety valve were he able to complete the requirements of safety valve, including making a complete and truthful proffer to the Government.
>
> And then, of course, there would be an additional three-level reduction for acceptance of responsibility.
>
> And so pertinent to the *Frye-Lafler* inquiry, the low end of the guidelines range, assuming that the Base Offense Level was 34, that the defendant completed safety valve, and that he also received acceptance of responsibility, was a guideline range of 87 to 108 months.  And because that range contemplates his completion of safety valve, he could be sentenced to less than the mandatory minimum if that was the decision of the Court.
>
> The high end of the guideline range, so if he was a Base Offense Level of 38, did not complete the safety valve, but did get those three points for acceptance, would have been 168 to 210 months. . . .  And again, just to be clear, if the defendant completed the safety valve proffer, he could argue for a sentence of less than ten years that then would give the Court the possibility to sentence him below the ten years.

3

> And then the last provision that's probably relevant here is that the plea agreement provided that the defendant would waive his right to appeal if he was sentenced at or below 108 months.

*Id.* at 7–9. The Government confirmed the plea agreement was communicated to Mr. Garcia's counsel. *Id*. at 9. And Mr. Garcia's counsel confirmed he timely and fully advised Mr. Garcia of the offer and its precise terms, and that the offer's terms had been communicated to Mr. Garcia through an interpreter to account for his English-language barrier. *Id*. at 9–10. Mr. Garcia's counsel then confirmed that Mr. Garcia declined the plea offer. *Id*. at 10.

After the Government described the evidence it expected to present at trial, it explained that "defendant would lose his [three-level reduction of] acceptance of responsibility points" if he went to trial, and that it was "very unlikely" that he would be able to qualify for safety valve post-trial. *Id*. at 10–12. The Government then summarized:

> And so under those circumstances if Defendant proceeded to trial, he would be subject to the ten-year, or 120-month mandatory minimum, which means, of course, that the Court could not sentence him to less than ten years. And because he would lose his five points for both acceptance of responsibility and the safety valve that make his guidelines in the plea agreement much lower, he would be looking at a guideline range of the low end. So using the mixture guideline of 151 to 188 months and at the high end 235 to 293 months.
>
> And I can tell the Court that in my experience, I expect that the lab results will come back with very pure methamphetamine and that the guidelines are likely to be significantly higher than those in the proposed plea agreement.

*Id*. at 12–13.

4

II

Mr. Garcia claims his counsel was deficient because he failed to explain the consequences of pleading guilty versus going to trial. *See* ECF No. 195. Federal prisoners may collaterally attack their convictions or sentences

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426–27 (1962). To prevail on an ineffective-assistance-of-counsel claim, Mr. Garcia must show that his counsel's performance "fell below an objective standard of reasonableness," and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Mr. Garcia "must show that his 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006). Review of counsel's performance is "highly deferential," with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 446 U.S. at 689. "To overcome that presumption, [Mr. Garcia] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . , a reasonable probability meaning a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (cleaned up).

Mr. Garcia does not come close to meeting this burden. Mr. Garcia cannot credibly claim that he was not made aware of the relative potential sentencing consequences of the

5

plea agreement versus going to trial considering the *Frye-Lafler* hearing; there, the Government clearly laid out the potential sentencing ranges Mr. Garcia faced with either path. Nor can Mr. Garcia demonstrate prejudice. To establish prejudice, a defendant "must show that, but for his counsel's advice, he would have accepted the plea." *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995). "A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) (citations omitted). Here, there can be no credible claim that Mr. Garcia would have accepted an offer to plead guilty had his counsel provided more information to him about the relative sentences he faced. Mr. Garcia maintained his innocence at trial, testifying under oath in his own defense that he believed the container of drugs at issue contained car parts, Trial Tr. vol. III [ECF No. 177] at 259, 264, and denied being "involved in drug dealing," *id*. at 266–67. Mr. Garcia is not entitled to relief under § 2255.

### III

Section 2255 requires an evidentiary hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). But a motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen*, 68 F.3d at

6

240. Mr. Garcia's claims lack any evidentiary support, are contradicted by the record, and do not entitle him to relief under § 2255. An evidentiary hearing is not warranted.

Finally, district courts possess authority to issue certificates of appealability for § 2255 proceedings. *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). A substantial showing is "a showing that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). Mr. Garcia's § 2255 motion is without merit, and he has raised no issues that warrant further proceedings. As such, he has not made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a certificate of appealability.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant Joel Llamas Garcia's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [ECF No. 194] is **DENIED**.

2. Defendant's request for an evidentiary hearing is **DENIED**.

3. No certificate of appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 12, 2024   s/ Eric C. Tostrud
　　　　　　　　　　　　　　　　　　　　Eric C. Tostrud
　　　　　　　　　　　　　　　　　　　　United States District Court

8